Tyson C. Langhofer, AZ Bar No. 32589*
Blake W. Meadows, GA Bar No. 569729*
ALLIANCE DEFENDING FREEDOM
440 1st St NW, Suite 600
Washington, DC 20001
Phone: (202) 393-8690
Fax: (202) 347-3622
bmeadows@ADFlegal.org
*Appearing Pro Hac Vice

Reese R. Boyd, III, SC Bar No. 7151
DAVIS & BOYD, LLC
1100 London St., Suite 201
Myrtle Beach, SC 29577
Phone: (843) 839-9800
Fax: (843) 839-9801
reese@davisboydlaw.com

*Attorneys for Plaintiffs*
(Additional counsel listed in signature block)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| **South Carolina Politics Club,** an unincorporated association on behalf of itself and its members; Jeremy Turner; and Adam Gainey, <br><br> Plaintiffs, <br><br> v. <br><br> **Stephen C. Osborne,** in his official capacity as Interim President of the College of Charleston; **Brian R. McGee,** in his official capacity as Provost and Executive Vice President of Academic Affairs of the College of Charleston, and in his individual capacity; **Alicia D. Caudill,** in her official capacity as Executive Vice President for Student Affairs of the College of Charleston, and in her individual capacity; **Michael Duncan,** in his official capacity as Associate Vice President for Student Involvement, and in his individual capacity; **Christine Workman,** in her official capacity as Director of Student Life of the College of Charleston, and in her individual capacity; | CASE NO. 2:18-cv-2335-RMG <br><br> **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** <br><br> **DEMAND FOR JURY TRIAL** |

1

**Jill Caldwell**, in her official capacity as
Associate Director of Student Life Organizations,
Programming and Events of the College of
Charleston, and in her individual capacity,

     Defendants.

Plaintiffs, South Carolina Politics Club ("SCPC"), an unincorporated association, on behalf of itself and its members, Jeremy Turner, and Adam Gainey, by and through counsel, and for their Complaint against Defendants aver the following.

# I.
## INTRODUCTION

1.    The First Amendment protects citizens' rights to associate with other likeminded individuals and to speak free from government discrimination on the basis of the content and viewpoint of their speech. This freedom from government censorship applies to all government actors, but especially to public colleges and universities. Public institutions of higher learning are uniquely expected, socially and legally, to be the free marketplace of ideas. The College of Charleston ("the College") is a public college that is violating its duty to maintain a free marketplace of ideas by preventing students from freely speaking and associating. Through the student organization registration process, the College requires Registered Student Organization ("RSO")-applicants to demonstrate that they do not duplicate the mission or purpose of another RSO, forcing associations between different groups as a condition of registration.

2.    SCPC is a group of students at the College who desire to educate their fellow students on the local and state political structures and systems in South Carolina. The group is overtly non-partisan. The College denied SCPC's RSO application because it decided, in its own discretion, that SCPC was too similar to another RSO. RSO status is a gateway to numerous resources and rights at the College. Thus, by denying SCPC's RSO application, the College prevented SCPC from meeting as an RSO, reserving space, inviting speakers, and accessing the pool of mandatory student activity fees that SCPC members pay into.

3.      SCPC has been denied registration despite repeated appeals. During the appeals, College officials told SCPC that in order to access the rights and privileges of an RSO, SCPC must either change its core purpose or join with another RSO, whose purpose is opposed by many SCPC members.

4.      The College maintains a policy that gives College officials the unbridled discretion to exclude an unregistered organization from becoming an RSO and the benefits which flow from being an RSO, if the College determines that an RSO-applicant "duplicates the mission or purpose of another organization." In application, any similarity can be deemed duplicative, even if there are significant and articulable differences between the RSO-applicant and the existing RSO. If an RSO-applicant is deemed duplicative of a pre-existing RSO, they are forced to change their message, join the existing RSO, or not form at all. This discretion to discriminate and require joining of an RSO with a different viewpoint, as a condition of speaking and associating, is anathema to the First Amendment.

5.      The application of this policy to SCPC not only offends the Constitution, it undermines the core of the College's role in promoting the free exchange of ideas in the search for truth.

6.      This is a civil action seeking injunctive and declaratory relief, damages, and attorney's fees, to vindicate and safeguard Plaintiffs' and SCPC members' fundamental rights as secured by the First and Fourteenth Amendments to the United States Constitution.

## II.

### Jurisdiction and Venue

7.      This action arises under the First and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

8.      This Court has original jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

9.     This Court has authority to issue the requested declaratory relief under 28 U.S.C. §§ 2201-02.

10.     This Court has authority to issue the requested injunctive relief under 28 U.S.C. § 1343(a)(3).

11.     This Court has authority to issue the requested damages under 28 U.S.C. § 1343(a)(4).

12.     This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988.

13.     Venue is proper under 28 U.S.C. § 1391 in the District of South Carolina because the events giving rise to the claims occurred in this district.

## III.

## INTRADISTRICT ASSIGNMENT

14.     Pursuant to Civil L.R. 3.01(a)(1), this case is a civil rights case, in a non-excepted category, suitable for assignment to the Charleston division because the events giving rise to this civil action occurred in Charleston County and the majority of the natural defendants reside in Charleston County.

## IV.

## PLAINTIFFS

15.     Plaintiff SCPC, is a student-led, non-partisan, unincorporated, expressive, unregistered organization, comprised of College of Charleston students. It brings this action on behalf of itself and its individual student members.

16.     SCPC's mission is to organize and educate students regarding the structures and processes of South Carolina local and state politics.

17.     SCPC's members identify as a diverse political body including classical liberal, conservative, and neither, but are united in their desire to understand the political system in the State of South Carolina from a distinctly non-partisan viewpoint.

18.     SCPC seeks to become an RSO at the College.

19.    SCPC seeks to avail itself of the meeting spaces, speech forums, and other benefits and privileges that are available to RSOs at the College.

20.    SCPC was denied RSO status in the 2018 spring semester at the College by Defendants under policies created and enforced by Defendants.

21.    If SCPC succeeds in this lawsuit, it will be able to obtain viewpoint-neutral access to RSO status and to all benefits and privileges available to such groups, including meeting space, access to channels of communication, and viewpoint-neutral access to mandatory student activity fee funding.

22.    Part of SCPC's mission and purpose is opposed to partisan education regarding political structures and thus SCPC seeks to be an overtly non-partisan group to foster education and involvement from members of diverse political backgrounds.

23.    SCPC's members pay mandatory student activity fees that are allocated to other RSOs, and are used to fund RSOs that advocate against SCPC's purpose and SCPC members' beliefs. If Plaintiffs succeed in this lawsuit, the mandatory student activity fees SCPC members are required to pay, that are distributed to RSOs, will be required to be distributed in a viewpoint-neutral manner.

24.    Plaintiff Jeremy Turner, is an individual full-time student at the College and is a member and officer of SCPC.

25.    Turner pays all fees required by the College, including $130.00 in mandatory student activity fees to date.

26.    Upon graduating, Turner will have paid $520.00 in mandatory student activity fees.

27.    Plaintiff Adam Gainey, is an individual full-time student at the College and is a member and officer of SCPC.

28.    Gainey pays all fees required by the College, including $390.00 in mandatory student activity fees to date.

29.     Upon graduating, Gainey will have paid $520.00 in mandatory student activity fees.

## V.

## DEFENDANTS

30.     Defendant Stephen C. Osborne, is the Interim President of the College.

31.     By delegated authority from the College Board of Trustees, the laws of South Carolina, and the College Bylaws, Defendant Osborne is responsible for the operation of the College, including the enactment, enforcement, administration, and policymaking relating to students and RSOs, including the RSO Registration Policy and the RSO Funding Policy, and practices implementing those policies.

32.     Defendant Osborne has responsibility and authority over the College budget and allocation of monies within the College, including the assessment of mandatory student activity fees and the allocation of the College's mandatory student activity fees to RSOs.

33.     Defendant Osborne possesses the authority to change, and is responsible for enforcement of the RSO Registration Policy and the RSO Funding Policy.

34.     Defendant Osborne enforces the RSO Registration Policy in an unconstitutional manner because he permits College officials to exercise unbridled discretion in implementing the RSO Registration Policy, has authority over the individuals who denied SCPC registration under this policy, has not changed the policy or implementation since SCPC was denied registration under this policy, and is allowing denials of RSO status that are arbitrary and without justification, and that result in and from content and/or viewpoint discrimination.

35.     Defendant Osborne enforces the RSO Funding Policy that requires Plaintiffs and members of SCPC to pay mandatory student activity fees and allows Defendants to exercise unbridled discretion in allocating mandatory student activity fees, both through denial of RSO status and through the allocation process, thus permitting discrimination against student groups on the basis of content and/or viewpoint of their speech.

36.     Defendant Osborne holds direct supervisory authority over Defendants Brian McGee, Alicia D. Caudill, and Michael Duncan.

37.     Defendant Osborne holds indirect supervisory authority over defendants other than those named in ¶ 36.

38.     Defendant Osborne is sued in his official capacity as Interim President of the College.

39.     Defendant Brian McGee is, and was at all times relevant to this complaint, the Provost and Executive Vice President of Academic Affairs of the College.

40.     Defendant McGee is responsible for the academic operations of the College, including the enactment, enforcement, administration, and policymaking related to students and RSOs, including the RSO Registration Policy, and the RSO Funding Policy, and practices implementing those policies.

41.     Defendant McGee has responsibility and authority over the College budget and allocation of monies within the College, including the assessment of mandatory student activity fees and the allocation of the College's mandatory student activity fees to RSOs.

42.     Defendant McGee possesses the authority to change, and is responsible for enforcement of, the RSO Registration Policy and the RSO Funding Policy.

43.     Defendant McGee enforces the RSO Registration Policy in an unconstitutional manner because he permits College officials to exercise unbridled discretion in implementing the RSO Registration Policy, has authority over the individuals who denied SCPC registration under this policy, oversaw the application of this policy to Plaintiffs, and is allowing denials of RSO status that are arbitrary and without justification and that result in and/or from content and/or viewpoint discrimination.

44.     Defendant McGee enforces the RSO Funding Policy that requires Plaintiffs and members of SCPC to pay mandatory student activity fees and allows Defendants to exercise unbridled discretion in allocating mandatory student activity fees, both through denial of RSO

status and through the allocation process, thus permitting discrimination against student groups on the basis of content and/or viewpoint of their speech.

45.    Defendant McGee possesses direct supervisory authority over Defendants Alicia D. Caudill and Michael Duncan.

46.    Defendant McGee holds indirect supervisory authority over defendants other than those in authority over him and those named in ¶ 45.

47.    Defendant McGee is sued in his official capacity as Provost and Executive Vice President of the College, and in his individual capacity.

48.    Defendant Alicia D. Caudill is, and was at all times relevant to this complaint, the Executive Vice President overseeing Student Affairs of the College.

49.    Defendant Caudill is responsible for the academic operations of the College, including the enactment, enforcement, administration, and policymaking related to students and RSOs, including the RSO Registration Policy and the RSO Funding Policy, and practices implementing those policies.

50.    Defendant Caudill has responsibility and authority over the College budget and allocation of monies within the College, including the assessment of mandatory student activity fees and the allocation of the College's mandatory student activity fees to RSOs.

51.    Defendant Caudill possesses the authority to change, and is responsible for enforcement of, the RSO Registration Policy and the RSO Funding Policy.

52.    Defendant Caudill enforces the RSO Registration Policy in an unconstitutional manner because she permits College officials to exercise unbridled discretion in implementing the RSO Registration Policy, has authority over the individuals who denied SCPC registration under this policy, oversaw the application of this policy to Plaintiffs, and is allowing denials of RSO status that are arbitrary and without justification and that result in and/or from content and/or viewpoint discrimination.

53.    Defendant Caudill enforces the RSO Funding Policy that requires Plaintiffs and members of SCPC to pay mandatory student activity fees and allows Defendants to exercise

unbridled discretion in allocating mandatory student activity fees, both through denial of RSO status and through the allocation process, thus permitting discrimination against student groups on the basis of content and/or viewpoint of their speech.

54.     Defendant Caudill possesses direct supervisory authority over Michael Duncan.

55.     Defendant Caudill holds indirect supervisory authority over defendants other than those in authority over her and Michael Duncan, named in Paragraph 54.

56.     Defendant Caudill is sued in her official capacity as Executive Vice President of the College, and in her individual capacity.

57.     Defendant Michael Duncan is, and was at all times relevant to this complaint, the Associate Vice President for Student Involvement of the College.

58.     Defendant Duncan is responsible for the operations of the College, including the enactment, enforcement, administration, and policymaking related to students and RSOs, including the RSO Registration Policy and the RSO Funding Policy, and practices implementing those policies.

59.     Defendant Duncan has responsibility and authority over the College budget and allocation of monies within the College, including the assessment of mandatory student activity fees and the allocation of the College's mandatory student activity fees to RSOs.

60.     Defendant Duncan possesses the authority to change and is responsible for enforcement of the RSO Registration Policy and the RSO Funding Policy.

61.     Defendant Duncan directly applied the RSO Registration Policy to Plaintiffs.

62.     Defendant Duncan was aware of and directly oversaw the application of the RSO Registration Policy by other defendants to Plaintiffs.

63.     Defendant Duncan enforces the RSO Registration Policy in an unconstitutional manner because he permits College officials to exercise unbridled discretion in implementing the RSO Registration Policy, denied SCPC registration under this policy, and is allowing denials of RSO status that are arbitrary and without justification and that result in and/or from content and/or viewpoint discrimination.

64.     Defendant Duncan enforces the RSO Funding Policy that requires Plaintiffs and members of SCPC to pay mandatory student activity fees and allows Defendants to exercise unbridled discretion in allocating mandatory student activity fees, both through denial of RSO status and through the allocation process, thus permitting discrimination against student groups on the basis of content and/or viewpoint of their speech.

65.     Defendant Duncan possesses direct supervisory authority over Defendants Christine Workman, and Jill Caldwell.

66.     Defendant Duncan is sued in his official capacity as Associate Vice President for Student Involvement, and in his individual capacity.

67.     Defendant Christine Workman is, and was at all times relevant to this complaint, the Director of Student Life of the College.

68.     Defendant Workman is responsible for the operations of the College, including the enforcement and administration related to students and RSOs, including the RSO Registration Policy and the RSO Funding Policy, and practices implementing those policies.

69.     Defendant Workman has responsibility and authority over allocation of monies within the College, including the assessment of mandatory student activity fees and the allocation of the College's mandatory student activity fees to student RSOs.

70.     Defendant Workman possesses the authority to shape the implementation and is responsible for enforcement of the RSO Registration Policy and the RSO Funding Policy.

71.     Defendant Workman enforces the RSO Registration Policy in an unconstitutional manner because she permits College officials to exercise unbridled discretion in implementing the RSO Registration Policy, denied SCPC registration under this policy, and is allowing denials of RSO status that are arbitrary and without justification, and that result in and/or from content and/or viewpoint discrimination.

72.     Defendant Workman enforces the RSO Funding Policy that requires Plaintiffs and members of SCPC to pay mandatory student activity fees and allows Defendants to exercise unbridled discretion in allocating mandatory student activity fees, both through denial of RSO

10

status and through the allocation process, thus permitting discrimination against student groups on the basis of content and/or viewpoint of their speech.

73.    Defendant Workman possesses direct supervisory authority over Defendant Jill Caldwell.

74.    Defendant Workman directly applied the RSO Registration Policy to Plaintiffs.

75.    Defendant Workman was aware of and directly oversaw the application of the RSO Registration Policy by other defendants to Plaintiffs.

76.    Defendant Workman is sued in her official capacity as Director of Student Life of the College, and in her individual capacity.

77.    Defendant Jill Caldwell is, and was at all times relevant to this complaint, the Associate Director of Student Life Organizations, Programming and Events of the College.

78.    Defendant Caldwell is responsible for the operations of the College, including the enforcement and administration related to students and RSOs, including the RSO Registration Policy and the RSO Funding Policy, and practices implementing those policies.

79.    Defendant Caldwell has responsibility and authority over the College budget and allocation of monies within the College, including the assessment of mandatory student activity fees and the allocation of the College's mandatory student activity fees to RSOs.

80.    Defendant Caldwell possesses the authority to suggest changes and is responsible for both enforcement and advising Student Government Association (SGA) enforcement of the RSO Registration Policy and the RSO Funding Policy.

81.    Defendant Caldwell enforces the RSO Registration Policy in an unconstitutional manner because she permits College officials to exercise unbridled discretion in implementing the RSO Recognition Policy, denied SCPC recognition under this policy, and is allowing denials of RSO status that are arbitrary and without justification and that result in and/or from content and/or viewpoint discrimination.

82.    Defendant Caldwell enforces the RSO Funding Policy that requires Plaintiffs and members of SCPC to pay mandatory student activity fees and allows Defendants to exercise

unbridled discretion in allocating mandatory student activity fees, both through denial of RSO status and through the allocation process, thus permitting discrimination against student groups on the basis of content and/or viewpoint of their speech.

83.    Defendant Caldwell directly applied the RSO Registration Policy to Plaintiffs.

84.    Defendant Caldwell was aware of and directly oversaw the application of the RSO Registration Policy by SGA to Plaintiffs.

85.    Defendant Caldwell is sued in her official capacity as Assistant Director of Student Life Organizations, Programming and Events of the College, and in her individual capacity.

## VI.

## STATEMENT OF FACTS

**RSO Registration Policy**

86.    Students who wish to engage in organized advocacy or simply to meet as an organization on the College's campus are required to become an RSO.

87.    Students who cannot form an RSO are placed at a significant disadvantage because they are denied access to the many "rights and privileges" that are granted to RSOs. A true, accurate, and complete copy of the College's *Policy on Unregistered Organizations* is attached as Exhibit 1.

88.    The Policy on Unregistered Organizations states, "An organization, regardless of national affiliation, that is not registered through the College of Charleston, is considered an unregistered organization." Ex. 1.

89.    The Policy on Unregistered Organizations further states that, "Unregistered organizations are not affiliated with the College of Charleston and do not enjoy the rights and privileges of registered organizations. They do not receive support, advisement, funding or management from the College of Charleston, and do not follow the College's code of conduct and Risk Management Policies." Ex. 1.

90.     The Policy on Unregistered Organizations outlines some rights available only to RSOs. "In addition to subjecting themselves to risky behaviors, students who join unregistered organizations will not have access to the privileges that members of registered organizations can enjoy. This could include (but is not limited to): leadership development opportunities, reserving space on campus, access to funding through the College, and the ability to represent the organization at College sponsored programs and events (Orientation, Accepted Students Weekend, etc.)." Ex. 1.

91.     The Policy on Unregistered Organizations also forbids RSOs from associating with unregistered organizations. "Registered organizations are prohibited from affiliating and socializing with unregistered organizations. This includes co-hosting events either on or off campus." Ex. 1.

92.     Thus, in order for students to host events, invite speakers, reserve space, apply for funding, and to socialize or cohost events with RSOs, students must form an RSO because unregistered organizations are denied all of the above benefits.

93.     In this way, the RSO registration process, as embodied in the RSO Registration Policy, serves as a gateway barrier to accessing numerous rights and privileges, including the right to access mandatory student activity fee funding, the right to reserve space on campus, and the right to hold expressive events on campus.

94.     The College has a four step process for becoming an RSO. The College details this process in a publication called, *The Compass: A Guide for Student Organizations*. Both the RSO Registration Policy and the RSO Funding Policy can be found in *The Compass: A Guide for Student Organizations*. A true, accurate, and complete copy of *The Compass: A Guide for Student Organizations* is attached as Exhibit 2.

95.     These four steps take place under the grant of authority to the SGA by the office of Student Life. "The Student Government Association (acting as an agent under the auspices of the Office of Student Life, a member of the Division of Student Affairs) granted your

organization the title of registered student organization because your group met certain criteria and accepted the responsibilities of being an active member of the CofC Community." Ex. 2 at 8.

96.     The first step of the RSO Registration Policy is approval by the "Student Organization Review Board (SOR)…a standing committee of the SGA that is responsible for reviewing all applications by groups requesting to become registered student organizations." Ex. 2 at 9.

97.     If the SOR votes to approve the RSO application, the RSO-applicant automatically moves to step two, consideration by the Student Senate. Ex. 2 at 10.

98.     If the SOR denies the RSO application, the RSO-applicant, after meeting with the SGA secretary, can appeal that denial and still move on to step two, consideration by the Student Senate. Ex. 2 at 11.

99.     The second step of the RSO Registration Policy requires a Student Senate vote on the RSO application. Ex. 2 at 10.

100.    A Student Senate vote denying registration is final and there is no formal appeals process.

101.    There is no exhaustive list of criteria that must be evaluated by SOR and the Student Senate.

102.    Some of the criteria evaluated by both the SOR and the Student Senate in the first and second steps of the process are included in the four page RSO Registration Policy. These criteria include but are not limited to the following:

- "Organizations must have a purpose consistent with the mission and values of the College." Ex. 2 at 8.

- "[The College] expects all registered student organizations to represent the College well and exercise professional and ethical standards of excellence." Ex. 2 at 8-9.

- "A student organization is defined as a group of ten (10) or more currently enrolled CofC students…" Ex. 2 at 9.

- "A student organization is defined as a group…whose primary purpose is to support the goals and mission of the College." Ex. 2 at 9.

- "These organizations must adhere to expectations of the entire College of Charleston community, contribute positively to the campus and abide by all State Laws and College policies." Ex. 2 at 9.

- "All registered student organizations undergo this [registration] process to determine if each is operating as an active part of the CofC community and a vital part of the educational process." Ex. 2 at 9.

- "It must be understood that the College reserves the right to revoke any organization's charter and/or status should the organization violate College policies, procedures, practices, rules and regulations." Ex. 2 at 9.

- "The proposed organization shall not duplicate the mission or purpose of another currently registered organization." Ex. 2 at 9.

103.    If the Student Senate votes to approve an RSO application, the RSO-applicant moves on to the third step and enters a 28-day waiting period. Ex. 2 at 10.

104.    The third step of the process is "The 28-day Waiting Period" during which an RSO-applicant must comply with a new set of criteria. Ex. 2 at 10-11.

   ▪ During the 28-day waiting period, the group must comply with all requirements or they will face "an extension of the 28-day waiting period or removal from consideration at the discretion of the SOR Board." Ex. 2 at 11. The requirements include but are not limited to the following:

      o "MUST schedule a meeting with SGA Treasurer…prior to final approval by Senate***The club or organization is responsible for scheduling this appointment." Ex. 2 at 11.

105.    The fourth step in the application process comes after the 28-day probation. The Senate takes a final vote to approve or deny registration. There is a final condition that must be

met, "A student representative of the proposed organization must be present at the Senate meeting in order to be approved." Ex. 2 at 11.

106.    There are no published criteria that must be considered by the Student Senate during the final vote to approve or deny an RSO application.

107.    An RSO-applicant must complete this entire process and receive a final affirmative vote before becoming an RSO. Ex. 2 at 11.

108.    The RSO Registration Policy does not define the following criteria, "consistent with the mission and values of the College," "represent the College well," "standards of excellence," "support[ing] the goals and mission of the College," "expectations of the entire College of Charleston community," "contributing positively," being "an active part of the CofC community," and "a vital part of the educational process."

109.    Each of these criteria requires viewpoint evaluation and disfavors viewpoints the College does not sanction.

110.    Each of these criteria is vague and requires the exercise of unbridled discretion by the SOR and SGA, but provides no guidance as to how that discretion must be exercised.

111.    Defendants' RSO Registration Policy does not include an exhaustive list of criteria by which to determine whether to approve or deny an RSO application.

112.    Defendants' RSO Registration Policy grants discretion to the SOR and SGA to approve or deny an RSO application based upon the content and viewpoint of the group's speech.

113.     Specifically, there is no exhaustive list of viewpoint and content neutral criteria to determine duplication of mission or purpose.

114.    The SOR and SGA have been granted broad discretion to determine if an RSO-applicant duplicates the mission or purpose of an existing RSO.

115.    There is no formal oversight process set up to review SOR and SGA denials of RSO applications.

116. The SOR and SGA have exercised the discretion to approve or deny RSO applications in arbitrary and capricious manners.

117. Religious organizations are disfavored in the application process, "If the proposed club is a religious affiliated club or organization the club needs approval from Religious Life Council before beginning the process with SOR." Ex. 2 at 9.

118. Defendants' RSO Registration Policy does not include any criteria by which to determine whether the Religious Life Counsel will approve or deny a religiously affiliated student group's RSO application.

**RSO Funding Policy**

119. Defendants create a forum for student expression by requiring all students to pay mandatory student activity fees partially designated to fund student expressive activity through RSOs.

120. The mandatory student activity fee at the College is $65.00 per student, per semester. These funds are partially distributed to RSOs that engage in expressive activities on campus. Ex. 2 at 18.

121. The College allocates part of the mandatory student activity fees to RSOs through three types of funding: contingency funding which "funds special events, programs, and/or travel," "semester operating budgets" which fund an organization's activities throughout a semester (Ex. 2 at 18), and "one-time 'start-up' budgets." Ex. 2 at 20.

122. Upon approving an RSO application, the SGA "[d]etermine[s] organization Status: Budgeted or Non-Budgeted (*Non-Budgeted organizations are still eligible for contingency budgets)." Ex. 2 at 10.

**A.    Contingency funding**

123. Contingency funding is limited to those RSOs who attend the Student Organization Summit. "[R]egistration does not guarantee receipt of funding, only an eligibility to apply. Once an organization is registered, the organization can apply for funds through the SGA Allocations Committee." Ex. 2 at 18. "Failure to have a student representation at the Student

Organizations Summit…will result in the following: Organizations will not have access to contingency funds for the appropriate semester." Ex. 2 at 19.

124.    The College employs a two-step process for allocating contingency funds. First, the SGA Allocations Committee must approve the request. Second, the Student Senate must approve the request.

125.    The SGA Allocations Committee does not evaluate an exhaustive list of objective criteria when determining which RSOs it will support through contingency funding or how much it will allocate.

126.    The SGA Allocations Committee examines the following non-exhaustive list of criteria when making contingency funding determinations:

- "It is the SGA's intent to enrich the College of Charleston student's education outside of the classroom and to provide social, cultural and recreational opportunities for the student body. [C]ontingency funds are allocated to registered student organizations to help meet that goal during the academic year." Ex. 2 at 18.

- "No money will be allocated to organizations that have not initiated fundraising efforts to support the activity or event brought before the Allocations Committee. Exceptions to this policy are at the sole discretion of the Allocations Committee." Ex. 2 at 22.

- "The Allocations Committee will consider contingency requests according to the organization's prior funding, activity, and intended use of the funds." Ex. 2 at 22.

- "Organizations cannot request Contingency Funds for an event/travel that was funded in their current budget. Contingency Funds may be requested for increases in Travel if there are extenuating circumstances (i.e. increase in hotel cost, registration fees, etc.)" Ex. 2 at 22.

18

- "A knowledgeable member must meet with the Allocations Committee to discuss the specifics of the request." Ex. 2 at 22.
- "In general, no money will be allocated for events that charge admission to College of Charleston students. However, organization [sic] receiving contingency funds may charge admission to offset costs of the requested event with the approval of the Allocations Committee. No collection of admission fees can be used as fundraisers to the organizations." Ex. 2 at 22.
- "Funds must be used to benefit the general student body." Ex. 2 at 23.

127.    The RSO Funding Policy does not define the following terms, "social, cultural and recreational opportunities" and "benefit of the general student body."

128.    The above terms are vague and require the SGA Allocations Committee to exercise unbridled discretion in determining whether to approve or deny a contingency funding application.

129.    The above terms require the SGA Allocations Committee to evaluate the content and viewpoint of funding requests and favors viewpoints that the SGA Allocations Committee, in its discretion, approves.

130.    The RSO Funding Policy grants unbridled discretion to the SGA Allocations Committee to waive the requirement of fundraising efforts for any reason it sees fit and provides no accountability for the exercise of that discretion.

131.    "The Allocations Committee will deliberate the request and alert the organization of its decision via email. If the Committee approves the request, a Bill will be written and present [sic] to Senate" Ex. 2 at 22.

132.    After initial approval by the Allocations Committee, "[a] student representative of the organization is required to appear before [sic] Senate to support the request. Failure to appear before [sic] Senate will cause the Bill to be tabled for up to two weeks. After two weeks, the Bill "dies" and the request must be resubmitted." Ex. 2 at 22.

133.    "If [sic] Senate approves the Bill, the funds will be available to the organization through the Office of Student Life Business Manager. The Organization is responsible for contacting the Business Manager to initiate the process of accessing the funds." Ex. 2 at 22.

134.    The policy does not require consideration of any specific criteria by the Student Senate as it makes this decision.

**B.    Semester operating budgets**

135.    The second type of funding available to students is a semester operating budget. Similar to contingency funding, there is a two-step process to obtain a semester operating budget. The first step is approval by the SGA Allocations Committee. The second step is approval by the Student Senate.

136.    Before an RSO can begin the process of applying for a semester operating budget, an RSO must satisfy five requirements.

137.    First, students must form an RSO before a specified deadline the previous semester. For example, "[t]o receive a Spring 2017 semester budget, an organization must be sanctioned by the SGA Senate no later than October 25, 2016. To receive a budget fall 2017 semester [sic] an organization must be sanctioned by SGA Senate no later than February 28, 2017." Ex. 2 at 20.

138.    Second, the RSO must not have membership restrictions. "Organizations that would be open to all students on campus; and place no membership requirements on their members may apply for a budget each semester...Organizations that restrict membership (i.e., closed membership, must be a member of a local, state or national affiliate, must be a specific declared major, must maintain a certain GPA (beyond the College's "in good standing" standard 2.0 GPA), must pay dues to be a member)…are not eligible for a semester budget." Ex. 2 at 20.

139.    Third, the RSO "must attend a Budget Workshop to be eligible to apply for a Budget for the fall and spring semesters." Ex. 2 at 20.

140.    Fourth, the RSO must attend the Student Organizations Summit or their budget will automatically be reduced. "Nonattendance at the Student Organization Summit will result in a 30% reduction of a budgeted organizations beginning budget." Ex. 2 at 19.

141.    Fifth, all budgets must be timely submitted. "All budget request [sic] received after the deadline will receive a 10% reduction at the discretion of the Allocation Committee." Ex. 2 at 21.

142.    Once an eligible RSO decides to apply for a semester operating budget, it enters the first of the two steps in the application process; evaluation by the SGA Allocations Committee.

143.    The policy does not contain an exhaustive list of criteria that the SGA Allocations Committee must evaluate.

144.    The policy lists the following criteria that the SGA Allocations Committee may use to evaluate the application:

- "It is the SGA's intent to enrich the College of Charleston student's education outside of the classroom and to provide social, cultural and recreational opportunities for the student body. Semester operating…funds are allocated to registered student organizations to help meet that goal during the academic year." Ex. 2 at 18.
- "May require fundraising efforts by organizations[.]" Ex. 2 at 19.
- "May…inquire about how funds have been acquired and how they will be spent." Ex. 2 at 19.
- "May require organizations to spend a portion of allocated funds on publicity." Ex. 2 at 19.
- "Will be reluctant to fund equipment, events, or programs, that fall within the purview of a campus department." Ex. 2 at 19.

145.    The RSO Funding Policy does not define the criteria, "provide social, cultural and recreational opportunities."

146.    The RSO Funding Policy grants unbridled discretion to the SGA Allocations Committee by using non-binding terms including, "May," "at the discretion of the Allocation Committee," and "Will be reluctant to fund."

147.    If an RSO's application for a semester operating budget is approved by the SGA Allocations Committee, it is submitted "to the Senate one week prior to the Senate vote to allow time to review and ask questions regarding the organization budget totals. The Senate will approve and submit the budget to the Student Government Advisor." Ex. 2 at 21.

148.    There are no published criteria to guide the Student Senate's consideration of an RSO's application for a semester operating budget.

149.    Defendants do not maintain an exhaustive list of objective, content and/or viewpoint-neutral criteria by which to guide the Student Senate when determining whether to allocate mandatory student activity fees to an RSO and how much to allocate.

150.    The Student Senate is vested with unbridled discretion to approve or deny applications for semester operating budgets.

**C. Start-up budgets**

151.    The third type of funding is a one-time "start-up" budget.

152.    There is no explicit process for how the one-time "start-up" budget is allocated or who makes decisions regarding allocation.

153.    "New organizations that register in the Fall/Spring semester after the budget process has been completed are eligible for a one-time 'start-up' budget of $250. The Start-Up Budget Request form (available on OrgSync) must be completed and submitted to the SGA Treasurer." Ex. 2 at 20.

154.    "This money: is NOT automatically allocated. [M]ust be used in the semester it is requested. [D]oes not "roll over" from one semester to another." Ex. 2 at 20.

155.    There are no published criteria guiding the decision to allocate the funds.

156.    No entity is granted explicit authority over this process.

157.    The policy grants College officials unbridled discretion to allocate or not allocate funds.

158.    If an RSO-applicant is denied RSO status, the group is denied access to funding from the mandatory student activity fees that are designated for RSO expression.

159.    Thus, because RSO status serves as a gateway barrier to access the forum created by the RSO Funding Policy, Defendants have unbridled discretion to exclude groups from receiving RSO funding by denying them RSO status initially, or through the re-registration process.

160.    If an RSO-applicant is not granted RSO status before the deadline, they are not eligible to receive a semester operating budget the next semester, even if their RSO Application is ultimately granted.

161.    Thus, Defendants maintain unbridled discretion in both the gateway to eligibility for funding and in how they distribute mandatory student activity fees to eligible RSOs.

**The College denied SCPC's RSO application and thus excluded SCPC from First Amendment Forums.**

162.    Defendants denied SCPC's application to become an RSO and SCPC is currently an unregistered organization.

163.    Every student member of Plaintiff SCPC, including Plaintiffs Turner and Gainey, pays mandatory student activity fees at the College.

164.    As an unregistered organization, SCPC is not allowed to reserve space and to use physical forums only open to RSOs.

165.    As an unregistered organization, SCPC is not allowed access to the other resources available to RSOs, including access to funding from mandatory student activity fees

166.    In February of 2018, Jeremy Turner, President of SCPC, filed a petition for SCPC to become an RSO. A true, accurate, and complete copy of this petition is attached as Exhibit 3.

167.    As part of the application process, Turner submitted the proposed constitution of SCPC. A true, accurate, and complete copy of this constitution is attached as Exhibit 4.

168.    SCPC's application for registration was complete and timely filed.

169.    On February 12, 2018 Student Body Secretary, Emily Ramsayer, informed Turner that SCPC's application for registration was denied by the SOR.

170.    Ramsayer stated the denial was "because we are prohibited from creating clubs that have the same purpose." A true, accurate, and complete copy of this email is attached as Exhibit 5.

171.    Ramsayer quoted from the RSO Registration Policy that "proposed organizations shall not duplicate the mission or purpose of another currently registered organization." Ex. 5.

172.    Ramsayer stated that the "Fusion Party" had a duplicative purpose as SCPC. And Ramsayer instructed Turner to collaborate with the Fusion Party. Ex. 5.

173.    On February 14, 2018, SCPC notified Secretary Ramsayer of its intent to appeal. A true, accurate, and complete copy of this intent to appeal letter is attached as Exhibit 6.

174.    The notification letter detailed the basis for the appeal.

175.    These grounds included marked differences in the purposes of the SCPC and the Fusion Party, including the fact that the Fusion Party is overtly partisan, while the SCPC is explicitly non-partisan, the Fusion Party encourages political activism, while the SCPC limits itself to education, and the Fusion Party seeks members who are not conservative and who also support its liberal and progressive agenda, while the SCPC welcomes members from all political persuasions.

176.    The letter also noted that the College has registered numerous political clubs whose only difference was ideological. Yet, when it came to SCPC and the Fusion Party, the College was unwilling to recognize ideological differences.

177.    The Defendants required SCPC to associate with the Fusion Party as a condition of RSO status despite SCPC communicating with the Fusion Party and SCPC leaders concluding that a joint organization would violate SCPC's purpose and mission.

178.    On or about, February 20, 2018, SCPC presented its formal appeal to the Student Senate.

179.    On or about February 20, 2018, the Student Senate denied SCPC's application to become an RSO.

180.    On or about February 20, 2018, SCPC requested the formal reason for denial of registration.

181.    According to Defendant Ramsayer, there is not a process for giving an official reason for denial. A true, accurate, and complete copy of Ramsayer's response is attached as Exhibit 7.

182.    Ramsayer stated that "the reason why your club was not passed through Senate was due to shared purposes between your Club and the Fusion Party." Ex. 7.

183.    Defendant Jill Caldwell was copied on all emails from Ramsayer to Turner. Ex. 5 and Ex. 7.

184.    Caldwell served as the advisor to Ramsayer and the Student Organizations Review Committee.

185.    Caldwell advised the committee to deny SCPC's application for registration.

186.    Ramsayer concluded that SCPC should pursue a merger of ideas with Fusion Party. Ex. 7.

187.    On or about February 26, 2018, the leaders of SCPC attempted one final appeal to Defendant Michael Duncan, the Associate Vice President for Student Involvement.

188.    Duncan confirmed that the Senate had voted against recognizing SCPC and that this was a final decision. A true, accurate, and complete copy of Duncan's response is attached as Exhibit 8.

189.    Duncan explained that to have further consideration, SCPC would be required to file a new petition for registration. Ex. 8.

190.    Additionally, Duncan said that reconsideration was not possible this semester. Ex. 8.

191.    Defendant Duncan presented SCPC with three options: Option one, get a "different purpose." Option two, "work with the Fusion Club for some common ground." Option three, get a "different concept" altogether. Ex. 8.

192.    None of these options respect the constitutional rights of the SCPC members.

193.    Associating with other organizations, even ones that may hold similar but not identical beliefs, alters the message SCPC's members wish to express and compromises SCPC's purpose for association.

194.    By denying SCPC's RSO Application pursuant to the RSO Registration Policy, the College denied SCPC eligibility to apply for funds under the RSO Funding Policy and this denial will result in continued ineligibility to apply for funds in the fall semester of 2018.

195.    By maintaining the RSO Funding Policy, the Defendants required Plaintiffs to subsidize the expression of other RSOs.

196.    By maintaining the RSO Funding Policy, the Defendants subjected Plaintiffs to content and/or viewpoint discrimination in the allocation process.

### VII.

### STATEMENT OF LAW

197.    Each and all of the acts alleged herein were done by Defendants and/or their agents or persons under their control, under the color and pretense of state law, statutes, ordinances, regulations, customs, usages, and policies of the State of South Carolina.

198.    Defendants and/or their agents or persons under their control denied SCPC RSO status under color of state law.

199.    Defendants and/or their agents or persons under their control subjected SCPC and all RSO-applicants to disparate treatment of budgeted and non-budgeted status under color of state law.

200.    Defendants knew or should have known that subjecting SCPC to a system of unbridled discretion, in the RSO application process, violated the Plaintiffs' constitutional rights.

201.    Defendants knew or should have known that denying SCPC RSO status without justification violated Plaintiffs' constitutional rights.

202.    Defendants knew or should have known that excluding RSOs from receiving mandatory student activity fee funding, through a system of unbridled discretion, violated Plaintiffs' constitutional rights.

203.    Defendants knew or should have known that requiring the members of SCPC to pay mandatory student activity fees and allocating those fees to other groups, through a content and/or viewpoint discriminatory system, violated Plaintiffs' constitutional rights.

204.    Defendants knew or should have known that classifying RSOs for preferential and disparate treatment, through a system of unbridled discretion, violated Plaintiffs' constitutional rights.

205.    Defendants knew or should have known that singling out religiously affiliated RSO-applicants for facially disparate treatment violates the rights of all members of potential RSOs, including Plaintiffs.

## VIII.
## FIRST CAUSE OF ACTION
## VIOLATION OF PLAINTIFFS'
## FIRST AMENDMENT RIGHTS OF ASSOCIATION

206.    The allegations contained in paragraphs 1 through 205 are incorporated herein by reference.

207.    The First Amendment of the United States Constitution, incorporated and made applicable to Defendants through the Fourteenth Amendment, guarantees Plaintiffs' rights of free association.

208.    A college's denial of RSO status to an RSO-applicant, through the exercise of unbridled discretion, burdens and abridges First Amendment rights of association.

209.    A college's denial of an RSO-applicant's access to meeting space, along with other benefits and privileges of registration, including the channels of communication available

to other student groups on its campus, burdens and abridges First Amendment rights of association.

210.    The denial of RSO status to an RSO-applicant is a form of prior restraint, placing a heavy burden on the college to justify its denial of registration.

211.    The content and/or viewpoint of an RSO-applicant's expression, or purpose for association, is an invalid basis for denying an RSO application.

212.    Defendants denied SCPC's timely and complete RSO application based on the content and viewpoint of SCPC's speech, and Defendants' subjective determination that SCPC's purpose was too similar to the Fusion Party.

213.    Because Defendants denied SCPC's RSO application, Defendants prevented SCPC from reserving campus space, meeting, hosting events, and accessing channels of communication available to RSOs.

214.    Because of Defendants' denial of SCPC's RSO application, Defendants hindered SCPC's ability to communicate with other students on campus.

215.    Defendants' Unregistered Organization Policy discourages students from associating with SCPC by labeling them an "unregistered…risky" organization and prohibiting all RSOs "from affiliating and socializing" with SCPC. This prohibition includes co-hosting events on or off campus. Ex. 1.

216.    Defendants have no legitimate or compelling reason for denying SCPC's RSO application.

217.    Defendants have no legitimate or compelling reason for enforcing the RSO Registration Policy, which requires and permits viewpoint discrimination.

218.    The RSO Registration Policy affords Defendants unbridled discretion to grant or deny RSO applications.

219.    The RSO Registration Policy reserves to RSOs key benefits and privileges, including the ability to reserve meeting space, invite speakers, access mandatory student activity

fee funding, and use campus channels of communication, denying those benefits and privileges to groups that are denied RSO status.

220.    Associating with different RSOs, even ones that may hold similar but not identical beliefs, alters the message SCPC's members wish to express, and requiring an association between Plaintiffs and an RSO that Plaintiffs do not wish to join violates Plaintiffs' rights to free association.

221.    Accordingly, Defendants' RSO Registration Policy, facially and as applied to SCPC, violates Plaintiffs' First Amendment rights of association.

222.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm, and are entitled to an award of monetary damages and equitable relief.

223.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to freedom of association and an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## IX.
### SECOND CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS'
### FIRST AMENDMENT RIGHTS TO FREEDOM OF SPEECH

224.    The allegations contained in paragraphs 1 through 223 are incorporated herein by reference.

**RSO Registration Policy**

225.    The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits content and/or viewpoint discrimination in a forum created for student speech, including decisions to grant RSO status and access to the benefits, privileges, and forums available to RSOs.

226. When a public college creates RSOs and makes benefits, privileges, and access to speech forums available to those RSOs, it creates a public forum for student speech and expression.

227. The RSO Registration Policy creates a public forum for student speech.

228. The government's ability to restrict speech in a public forum is limited.

229. A public college may not apply content and/or viewpoint-based standards to the formation of RSOs.

230. The RSO Registration Policy lacks objective criteria, factors, or standards for determining whether a group may become an RSO, and thus affords Defendants and other College officials unbridled discretion to grant or deny registration to an RSO-applicant, permitting discrimination against an RSO-applicant because of the content and/or viewpoint of its speech.

231. Defendants' RSO Registration Policy does not have a process to provide justification for denial of RSO status, thus conferring unbridled discretion on officials to discriminate based on content and/or viewpoint.

232. Defendants discriminated against SCPC, based on the content and viewpoint of its speech, by denying SCPC's RSO application because it allegedly "duplicates" another RSO's mission or purpose.

233. Defendants' RSO Registration Policy and resulting denial of SCPC's RSO application fails to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

234. Defendants' denial of SCPC's RSO application and the resulting exclusion of SCPC from receiving mandatory student activity fee funding has no rational basis.

235. Defendants' RSO Registration Policy is not content and viewpoint-neutral, and does not leave open ample alternative channels of communication.

236.    Accordingly, Defendants' RSO Registration Policy, and their enforcement of this policy against Plaintiffs, violated Plaintiffs' rights to freedom of speech guaranteed by the First Amendment under any test this court applies.

237.    The RSO Registration Policy is facially viewpoint discriminatory against religious viewpoints because it singles religious viewpoints out for additional barriers to entry into RSO Status.

238.    The RSO Registration Policy is facially viewpoint discriminatory against religious viewpoints because it does not contain exhaustive and objective criteria to limit the discretion of defendants when approving or denying clubs with religious affiliation.

239.    The Unregistered Organization Policy is facially viewpoint discriminatory because it prevents unregistered organizations from hosting any events and prevents them from interacting with any RSO including cosponsoring events.

**RSO Funding Policy**

240.    The First Amendment's Free Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits a public college from permitting viewpoint discriminatory allocation of mandatory student activity fee funding to RSOs.

241.    When a public college collects mandatory student activity fees and allows RSOs to apply for funding from those mandatory student activity fees, it creates a public forum for student expression.

242.    The RSO Funding Policy creates a public forum for student expression.

243.    The forum, comprised of mandatory student activity fees, must be administered in a viewpoint and content neutral manner.

244.    The College fails to administer mandatory student activity fees in a viewpoint-neutral manner in two specific ways. First, Defendants are discriminatory gatekeepers of the funds collected through mandatory student activity fees. Second, defendants have unbridled discretion to decide which RSOs will receive funding from mandatory student activity fees and in what amounts.

245.    Gatekeeper discrimination arises because students must form an RSO to be eligible for any funding. When Defendants discriminate based on content and/or viewpoint in registering RSOs, the RSO Registration Policy serves as a discriminatory gateway to access the mandatory student activity fees paid by students for distribution to RSOs.

246.    Unbridled discretion is a recognized form of viewpoint discrimination.

247.    Thus the RSO Registration Policy combined with the RSO Funding Policy's eligibility guidelines create gatekeeper discrimination.

248.    Defendants' exclusion of SCPC from the opportunity to apply for mandatory student activity fee funding is content and/or viewpoint discrimination.

249.    Defendants' RSO Funding Policy and the resulting exclusion of SCPC from the opportunity to apply for mandatory student activity fee funding fail to satisfy strict scrutiny because the policy is not narrowly tailored to promote a compelling government interest.

250.    Even without gatekeeper discrimination, a public college may not apply content and/or viewpoint-based standards in allocating money derived from mandatory student activity fees.

251.    If the College distributes mandatory student activity fees to RSOs in a manner that is not neutral toward viewpoint, the College compels student speech in violation of the First Amendment.

252.    The lack of objective criteria, factors, or standards for determining whether a group may receive funding from mandatory student activity fees and the amount of any funding constitutes unbridled discretion to exclude, prohibit, or disadvantage speech based on its content and/or viewpoint in violation of the First Amendment.

253.    The RSO Funding Policy contains no objective, viewpoint-neutral criteria to determine which RSOs will receive an annual budget and the amount of any granted budget.

254.    The RSO Funding Policy contains no objective, viewpoint-neutral criteria to determine when an RSO can receive contingency funding and the amount of any contingency funding.

255.    The RSO Funding policy affords unbridled discretion to grant or deny RSO funding and also affords unbridled discretion regarding the amount of any such funding.

256.    Thus, because Defendants distribute mandatory student activity fees in a discriminatory manner through a system of unbridled discretion, Defendants compel Plaintiffs', including Plaintiffs Turner and Gainey, to speak messages by financially supporting RSOs whose messages they disagree with.

257.    An RSO's use of funding obtained through mandatory student activity fees to promote its own views is a form of protected speech.

258.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiffs are entitled to an award of monetary damages and equitable relief.

259.    Plaintiffs and SCPC members are entitled to content and/or viewpoint-neutral access to all forums available to RSOs, including access to funding from mandatory student activity fees.

260.    Plaintiffs and SCPC members are entitled to content and/or viewpoint-neutral distribution of mandatory student activity fees paid and distributed to RSOs.

261.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

262.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**X.**

**THIRD CAUSE OF ACTION**
**UNCONSTITUTIONAL CONDITION**

263.    The allegations contained in paragraphs 1 through 262 are incorporated herein by reference.

264.    The United States Constitution prohibits the government from placing a condition on the receipt of a benefit that infringes upon the recipient's constitutional rights, even if the government has no obligation to provide that benefit in the first place.

265.    The United States Constitution also prohibits the government from conditioning the exercise of certain constitutional rights on a citizen's agreement to surrender other constitutional rights.

266.    SCPC has the right to speak without being forced to modify its message.

267.    Requiring SCPC to associate with other RSOs, even ones that may hold similar but not identical beliefs, alters the message SCPC's members wish to express and violates their right to free speech by requiring them to alter their message as a condition on their ability to express their message.

268.    Conditioning RSO Status on SCPC merging with the Fusion Party, functions as an unconstitutional condition on Plaintiffs' freedom of expression.

269.    SCPC members have the right to associate with individuals of their own choosing and the same right not to associate with other individuals whom they choose not to associate with.

270.    Requiring SCPC to associate with the Fusion Party when SCPC members do not wish to join, as a condition of becoming an RSO, is an unconstitutional condition which restricts SCPC members' right to free association.

271.    Accordingly, Defendants' RSO Registration Policy, facially and as applied to SCPC, violates the First Amendment rights of association and expression by imposing an unconstitutional condition on the exercise of associational and expressive rights.

34

272.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm, and are entitled to an award of monetary damages and equitable relief.

273.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of association and an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## XI.
### FOURTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS'
### FOURTEENTH AMENDMENT RIGHTS TO EQUAL PROTECTION

274.    The allegations contained in paragraphs 1 through 273 are incorporated herein by reference.

275.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the equal protection of the laws, which prohibits Defendants from treating Plaintiffs differently than similarly situated students or associations.

276.    The government may not treat a person or association of persons disparately as compared to similarly situated persons or associations when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

277.    Plaintiffs are similarly situated to other RSO-applicants at the College.

278.    Plaintiffs are similarly situated to other associations of students who are similar but not identical to already existing RSOs, yet have been granted RSO status.

279.    Defendants treated Plaintiffs and SCPC members differently than other similarly situated entities on campus by denying Plaintiffs and SCPC members access to speech forums that RSOs may access. Examples of "similar" organizations that are permitted to be simultaneously recognized include the Network of Enlightened Women and the National Organization for Women, as well as the Political Science Club and Turning Point USA.

280.    Defendants' policies and actions disadvantaged Plaintiffs and SCPC members by limiting their ability to associate on an equal basis as other similarly situated associations and students.

281.    Defendants' policies and actions disadvantaged Plaintiffs and SCPC members by limiting their ability to speak on an equal basis as other similarly situated associations and students.

282.    Defendants' policies and actions disadvantaged Plaintiffs and SCPC members by limiting their ability to access speech forums on an equal basis as other similarly situated associations and students.

283.    Defendants' policies and actions have caused Plaintiffs and SCPC members actual damages.

284.    Defendants' policies and actions violate Plaintiffs and SCPC members' fundamental rights to association and free speech.

285.    When government regulations, like Defendants' policies and actions, infringe on fundamental rights, discriminatory intent is presumed.

286.    Defendants' RSO Policies are underinclusive, prohibiting some speech and association while permitting similarly situated speech and association by others students and RSOs.

287.    Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiffs.

288.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer economic injury and irreparable harm. Plaintiffs are entitled to an award of monetary damages and equitable relief.

289.    Because of Defendants' actions pursuant to the RSO Registration Policy and the RSO Funding Policy, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiffs are entitled to an award of monetary damages and equitable relief.

290.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their Fourteenth Amendment right to equal protection of law and an injunction against Defendants' RSO Registration Policy and RSO Funding Policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## XII.
### FIFTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS'
### FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS OF LAW

291.    The allegations contained in paragraphs 1 through 290 are incorporated herein by reference.

292.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to due process of law, which prohibits Defendants from promulgating and employing vague standards that allow for content and viewpoint discrimination in determining whether to approve Plaintiffs' RSO application or to provide mandatory student activity fee funding.

293.    The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

294.    The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

295.    The government may not regulate speech based on policies that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

296.    Defendants' RSO Registration Policy and RSO Funding Policy are impermissibly vague and ambiguous and are thus incapable of providing meaningful guidance to Defendants or allowing Plaintiffs to conform their conduct.

297.    The RSO Registration Policy is impermissibly vague and ambiguous because it

broadly authorizes Defendants to deny RSO applications for any reason or no reason at all, without providing sufficient objective criteria upon which to make this determination.

298.    The RSO Funding Policy is impermissibly vague and ambiguous because it excludes Plaintiffs from receiving funding from mandatory student activity fees unless they have been registered pursuant to the vague and ambiguous RSO Registration Policy.

299.    The RSO Funding Policy is impermissibly vague and ambiguous because it broadly authorizes Defendants to deny funding to RSOs for any reason or no reason at all, without providing sufficient objective criteria upon which to make this determination.

300.    The RSO Registration Policy is impermissibly vague and ambiguous because it permits Defendants and other officials to evaluate whether an RSO-applicant has "a purpose consistent with the mission and values of the College," will "represent the College well," will "exercise professional and ethical standards of excellence," will "adhere to expectations of the entire College of Charleston Community," will "contribute positively to the campus," will be "an active part of the CofC community and a vital part of the educational process," and will "not duplicate the mission or purpose of another currently registered organization," while providing no objective definitions of these terms and phrases or instruction on how these concepts should be evaluated.

301.    The RSO Funding Policy is impermissibly vague and ambiguous because it permits Defendants and other officials evaluate whether an RSO will "enrich the College of Charleston student's education outside of the classroom and…provide social, cultural and recreational opportunities," has received "prior funding, activity, and intended use of the funds," and will "benefit the general student body," while providing no objective definitions of these terms and phrases or instruction on how these concepts should be evaluated.

302.    Because of Defendants' actions pursuant to the RSO Registration Policy and the RSO Funding Policy, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiffs are entitled to an award of monetary damages and equitable relief.

303.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration

that Defendants violated their Fourteenth Amendment right to equal protection of law and an injunction against Defendants' RSO Registration Policy and RSO Funding Policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A.  A declaratory judgment that Defendants' RSO Registration Policy, facially and as-applied, violates Plaintiffs' rights under the First and Fourteenth Amendments;

B.  A declaratory judgment that Defendants' RSO Funding Policy, facially and as-applied, violates Plaintiffs' rights under the First and Fourteenth Amendments;

C.  A preliminary and permanent injunction prohibiting Defendants from enforcing the RSO Registration Policy;

D.  A preliminary and permanent injunction prohibiting Defendants from enforcing the RSO Funding Policy;

E.  Actual compensatory damages for infringing Plaintiffs' and Plaintiff SCPC's members exercise of their First and Fourteenth Amendment rights;

F.  Actual compensatory damages in the amount of mandatory student activity fees paid by each of Plaintiff SCPC's student members, including Plaintiffs Turner and Gainey, that were collected pursuant to a viewpoint-discriminatory policy that infringed Plaintiffs' First Amendment rights;

G.  Nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights;

H.  Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988;

I.  All other further relief to which Plaintiffs may be entitled, and

J.  That this Court retain jurisdiction of this matter as necessary to enforce the

Court's orders.

Respectfully submitted on this, the 20th day of August, 2018,

                              Attorneys for Plaintiffs,


                              By: /s/ Reese R. Boyd, IIII

                              Reese R. Boyd, III, SC Bar No. 7151
                              DAVIS & BOYD, LLC
                              1100 London St. Suite 201
                              Myrtle Beach, SC 29577
                              Phone: (843) 839-9800
                              Fax: (843) 839-9801
(designated local co-counsel)    reese@davisboydlaw.com


                              Tyson C. Langhofer, AZ Bar No. 32589*
                              Blake W. Meadows, GA. Bar No. 569729*
                              ALLIANCE DEFENDING FREEDOM
                              440 1st St NW, Suite 600
                              Washington, DC 20001
                              Phone: (202) 393-8690
                              Fax: (202) 347-3622
                              BMeadows@ADFlegal.org
                              TLanghofer@ADFlegal.org


                  Attorneys for Plaintiffs
                  *Appearing *pro hac vice*

## **VERIFICATION OF COMPLAINT**

I, Jeremy Turner, a citizen of the United States and a resident of the State of South Carolina, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this ___8th___ day of August, 2018.

_____

Jeremy Turner, on behalf of himself and as an
authorized representative of Plaintiff, South
Carolina Politics Club at College of Charleston

41

## **VERIFICATION OF COMPLAINT**

I, Adam Gainey, a citizen of the United States and a resident of the State of South Carolina, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this   8th   day of August, 2018.


Adam Gainey, on behalf of himself and as an
authorized representative of Plaintiff, South
Carolina Politics Club at College of Charleston